NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO G.W.

No. 1 CA-JV 25-0047

FILED 12-03-2025

---

Appeal from the Superior Court in Maricopa County
No. JD534817, JS520997
The Honorable Adele Ponce, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Meredith Oakes Peterson
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in
which Judge Anni Hill Foster and Judge Veronika Fabian joined.

---

**M O R S E**, Judge:

¶1        Gideon E. ("Father") appeals from the juvenile court's ruling terminating his parental rights as to G.W. ("Child").  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        On December 16, 2022, Breanna W. ("Mother") gave birth to Child, who remained in the NICU after Mother was discharged.[1]  Although Mother had made plans for Child to be adopted, the adoptive family withdrew after Mother disclosed that she had consumed alcohol during the pregnancy.  On December 27, 2022, the Department of Child Safety ("DCS") took temporary custody of Child and placed her with a foster family.  Child remained with this placement family throughout this process.

¶3        On January 3, 2023, Father arrived late for a supervised visit with Child.  According to DCS, he lacked basic parenting skills, as he did not bring proper supplies or know how to hold Child.  DCS noted that Father's "caregiver protective capacities" were unknown as he had not been assessed yet.

¶4        DCS determined that Father's alcohol and substance use inhibited his ability to perform parental responsibilities and referred Father to substance-abuse treatment through Terros Health ("Terros").  These services were terminated due to Father's lack of engagement and failure to schedule an intake.  Father failed to participate in drug testing consistently and, when he did, tested positive for THC and ETG—an indicator of alcohol use.  He stopped testing in September of 2024.

¶5        DCS raised concerns about Father's lack of progress after Mother reported that Father gave her "easy access" to drugs and Father acknowledged his substance use was not good for Child.  DCS concluded that Father had not shown DCS he could parent full-time.

¶6        DCS also offered Father multiple reunification services, including Family Connections, the Nurturing Parent Program ("NPP"), Child and Family Team ("CFT") meetings, and transportation assistance.  But Father failed to participate meaningfully in these programs.  NPP dropped him from the program three times due to repeated no-shows and lack of engagement.  DCS provided Father with virtual links to engage in

---

[1]        Mother's parental rights were also terminated, but Mother is not a party to this appeal.

CFT, but he did not participate. DCS also reported general difficulty communicating with Father and noted that the only way to contact him was through third parties.

¶7        DCS scheduled Father for twice-weekly supervised visitation, but the assigned provider discontinued services twice—first on November 26, 2024, and again in January 2025—because Father did not participate. Father's last contact with Child was either September 24, 2024 or, at the latest, November 26, 2024. On January 9, 2025, Father requested, via his mother's email, to resume visits and potentially meet to discuss this, but did not respond when DCS reached out to him.

¶8        DCS repeatedly attempted to discuss the case with Father, both in-person and virtually, and provided transportation to these meetings. But Father's engagement remained inconsistent. Father also failed to provide proof of employment or housing throughout this period. In October of 2024, Mother and Father had another child, stopped engaging in reunification services, and decreased communication with DCS.

¶9        In January 2025, Child's counsel petitioned to terminate Father's parental rights citing abandonment, chronic substance abuse, and fifteen-months out-of-home placement grounds.

¶10        On March 21, 2025, Father failed to appear without good cause at a pre-trial conference regarding termination. In Father's absence, the court proceeded with an accelerated termination hearing. The case manager testified that, based on a variety of factors, Father had failed to remedy the circumstances causing the out-of-home placement and there was a substantial likelihood that Father would not be able to effectively exercise parental care and control.

¶11        After this hearing, the court issued its findings that Child had been in an out-of-home placement for a cumulative period of fifteen months or longer, Father had a history of chronic abuse of dangerous drugs, and Father abandoned Child. The court found Father was unable to provide proper and effective parental care and control, had only sporadically visited Child, failed to establish or maintain a normal parent-child relationship, and did not assume parental responsibility. The court also found that Father had not provided support, maintained reasonable contact, or seen Child in at least four months. The court determined that terminating Father's parental rights was in Child's best interest, noting that the placement family intended to adopt and had provided a stable home for Child since she was 11 days old. The court further concluded that

maintaining the parental relationship would be detrimental as it would delay permanency for Child.

¶12        Accordingly, the court terminated Father's parental rights on three statutory grounds: (1) abandonment under A.R.S. § 8-533(B)(1), (2) chronic drug abuse under A.R.S. § 8-533(B)(3), and (3) fifteen-months out-of-home placement under A.R.S. § 8-533(B)(8)(c).

¶13        Father timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2102(A)(1).

## DISCUSSION

¶14        Father argues the court erred in terminating his parental rights on each ground, asserting that the court's findings were clearly erroneous and unsupported by the record.  Father does not challenge the court's decision to hold the accelerated termination hearing in his absence or the court's best interests finding.

¶15        Parents have a fundamental right in the custody and control of their children, but that right is not absolute.  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000).  To terminate parental rights, the court must find at least one statutory ground set out in A.R.S. § 8-533(B) by clear and convincing evidence and must find that termination is in the child's best interests by a preponderance of the evidence.  *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018).  We must affirm the court's factual findings if they are supported by reasonable evidence and inferences.  *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023).  We defer to the court's factual findings because it is in the best position to weigh evidence and assess the credibility of witnesses.  *Id.*

¶16        Termination of parental rights based on time in out-of-home placement requires DCS to prove (1) the child was in out-of-home placement for at least fifteen months, (2) DCS made diligent efforts to provide appropriate reunification services, (3) the parent is unable to remedy the circumstances of placement, and (4) a substantial likelihood that the parent will remain incapable of providing proper and effective parental control in the near future.  A.R.S. § 8-533(B)(8)(c); *see also Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 56, ¶ 51 (App. 2013).

¶17        Father does not dispute that Child had been in out-of-home placement for the requisite time and that DCS offered adequate reunification services.  He only challenges the court's findings that he was

unable to remedy the circumstances causing Child to remain in out-of-home placement and there was a substantial likelihood that he would remain incapable of providing sufficient parental control. Father argues that his "parenting abilities have been unknown to [DCS] throughout the entirety of this case." Because Father stopped participating in court-ordered services in January 2023, he asserts the court lacked adequate evidentiary support to determine whether he was currently unable—or substantially likely to remain unable—to provide appropriate parental care and control.

¶18            Contrary to Father's assertion, the record supports the court's findings regarding his ability to parent. In its initial assessment, DCS reported that Father lacked "any parenting skills," citing his failure to bring any supplies for Child and his lack of knowledge of how to hold her. At the hearing, the case manager testified that Father failed to engage meaningfully with the offered services, and her last conversation with him was in November of 2024. And Father's decision to stop participating in services supports the court's findings that he was unlikely to be able to provide appropriate parental care and control in the future.

¶19            Since Father's paternity was established in February 2023, he had only sporadically visited Child and failed to provide reasonable support or maintain consistent contact. While there is some dispute regarding the date of his last visit, the record reflects that he had not seen Child for approximately four months by the time of the hearing. The case manager testified that Father had been sporadic in visitation and had never sent Child any cards, gifts, letters, or support.

¶20            Additionally, the case manager testified to Father's chronic substance abuse, failure to complete his treatment programs, and its impact on his ability to parent. Father acknowledged that his substance use was harmful to Child but failed to participate consistently in the treatment programs available to him and provided Mother with access to drugs.

¶21            Father was offered a range of services to develop his parenting skills and progress towards reunification. However, he participated inconsistently and was terminated from every program due to his lack of engagement. Throughout this, Father remained unemployed and unable to meet Child's basic needs. On this record, the court did not abuse its discretion in finding that Father failed to remedy the circumstances causing out-of-home placement and that there was a substantial likelihood he would remain incapable of proper and effective parental control in the near future. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) ("We do not reweigh the evidence.").

¶22        Because we affirm termination based on fifteen-months out-of-home placement grounds, we need not address the substance abuse or abandonment grounds. *See Michael J.*, 196 Ariz. at 251, ¶ 27.

## CONCLUSION

¶23        For the foregoing reasons, we affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR